## MILITARY INTERSTATE ASSOCIATION OF SAVANNAH *v.* SAVANNAH, THUNDER-BOLT & ISLE OF HOPE RAILWAY.

There was no error in dismissing on demurrer an action brought against a railway company of this State, chartered under the general law, upon a contract of subscription for shares of stock in another incorporated company, when the plaintiff's petition alleged nothing showing how or why it was for any legitimate use or purpose either necessary or proper for the defendant to own and hold such stock.

Submitted June 27, — Decided July 27, 1898.

Action on contract.	Before Judge Norwood.	City court of Savannah.	November term, 1897.

*Alexander & Hitch,* for plaintiff.
*Barrow & Osborne,* for defendant.

LUMPKIN, P. J.	The Military Interstate Association of Savannah is a corporation authorized by its charter "to give an annual celebration, each spring, and offer suitable money prizes for competitive drills, rifle contests, shotgun tournaments, and band contests, with fireworks and other amusements, the object being to attract people to and advertise Savannah." The Savannah, Thunderbolt & Isle of Hope Railway, which was chartered under the general law for the incorporation of railroad companies embraced in section 2159 et seq. of the Civil Code, by its agent, Harriman, signed a contract whereby it undertook to subscribe for a certain number of shares of the capital stock of the corporation first named. Upon a refusal by the railway company to pay this subscription, the Military Interstate Association brought its action to recover the same. The petition was dismissed on demurrer, and the plaintiff excepted.

We have no doubt at all of the correctness of the judgment rendered by the trial court. If under any circumstances a railway company, chartered as stated, has authority to subscribe for stock in such an association as the plaintiff, it certainly does not appear from anything contained in the petition now under review that the defendant railway company could do so in this instance without committing an act ultra vires. The petition

alleges absolutely nothing which shows that it was either necessary or proper for this railway company to hold stock in the plaintiff association for any use or purpose legitimate to the object for which the railway company was incorporated. It is true that the contract of subscription does recite in general terms that carrying out the objects for which the association was formed would be "to the mutual and reciprocal advantage" of the subscribers for the stock; but the plaintiff does not undertake to allege how, in a single particular, the railway company, by signing or carrying out its contract of subscription, could in any possible manner be benefited. We are not disposed to hamper railway companies in engaging in any legitimate enterprise connected with the purposes for which they are organized and operated, but we must draw the line somewhere; and accordingly we agree with the trial judge in holding that, under the facts alleged, the attempted subscription of the defendant to the capital stock of the plaintiff association was an act ultra vires and therefore void, although it is conceivable that, because of the "competitive drills, rifle contests, shotgun tournaments, and band contests, with fireworks and other amusements," the business of the railway company might be incidentally increased, if it affirmatively appeared that its line ran to the grounds upon which these fascinating and diverting performances were to take place.

*Judgment affirmed. All the Justices concurring.*